**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-12822

————————————————

JOHN DOE, 1,

JANE DOE, 1,

    as Parents and Natural Guardians
    on behalf of Minor Doe 1,

JOHN DOE, 2,

JANE DOE, 2,

    as Parents and Natural Guardians
    on behalf of Minor Doe 2,

JANE DOE, 3,

    as Parent and Natural Guardian
    on behalf of Minor Doe 3,

                                  *Plaintiffs-Appellants,*

versus

UNITED STATES OF AMERICA,

                                  *Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cv-00003-MTT

———————————

Before JILL PRYOR, NEWSOM, and LAGOA, Circuit Judges.

JILL PRYOR, Circuit Judge:

Three children suffered physical and emotional abuse by two employees at a government-owned childcare center. The children's parents sued the United States on their children's behalf, alleging negligence in failing to protect the children. The district court dismissed the parents' claims for lack of subject matter jurisdiction based on sovereign immunity because the court concluded that the claims fell under the intentional tort exception to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2680(h). The district court also denied the parents' motion to amend their complaint, reasoning that any amendment would be futile. The parents appealed. After careful review, and with the benefit of oral argument, we vacate the district court's dismissal of their claims and denial of their motion to amend.

## I. BACKGROUND

This case concerns child abuse at the Child Development Center West (the "Center"), a daycare facility located on Robins

Air Force Base in Houston County, Georgia.[1] The employees working at the Center when the abuse occurred included Zhanay Kiana Flynn, Antanesha Mone Fritz, and Latona Mae Lambert. Flynn and Fritz served as childcare workers at the Center. Lambert served as the Center's director and childcare administrator.

The Air Force "voluntarily adopted the Air Force [] Child Development Center [] Criteria" (the "Criteria"). Doc. 12-1 at 5.[2] The Criteria set forth rules requiring daycare staff at the Center to, among other things, prevent physical and psychological child abuse, report suspected child abuse, place on administrative leave any person under investigation for child abuse, prohibit threats and derogatory remarks toward children, and foster children's emotional well-being.

Between January and February 2021, three children, Minor Doe 1, Minor Doe 2, and Minor Doe 3, attended the Center. "[T]he parents of Minor Doe 1, Minor Doe 2, and Minor Doe 3 paid for their children to attend the . . . [C]enter, with the assurance that their children would be cared for in a safe and reasonable manner." Doc. 1 at ¶ 5. They "entrusted their children to the exclusive care and custody of the . . . [C]enter." *Id*. at ¶ 4.

---

[1] The facts recited here are taken from the parents' complaint. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1218 n.2 (11th Cir. 2016) ("At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to the [non-movant].").

[2] "Doc." numbers refer to the district court's docket entries.

Contrary to these assurances, two of the Center's employees, Flynn and Fritz, physically and emotionally abused the three children at the Center. Flynn and Fritz hit the children in the face, made them fight other children, shook them, kicked them, pushed them, stepped on them, pulled their hair, sprayed them with cleaning solution, threw hard objects at them, threatened them, struck toys out of their hands, lifted their "cots" to cause them "to fall on the ground," and forced them into "a small enclosure as punishment when they cried." *Id.* at ¶ 7. Lambert, the Center's director, never reported the ongoing abuse to an appropriate authority. The parents sued the United States for negligence, alleging that the government breached its affirmative duty to care for and protect the children by failing to prevent and report child abuse at the Center as required by the Criteria.

The government moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. First, the government argued that the district court lacked subject matter jurisdiction because the intentional tort exception barred the parents' claims. Second, the government argued that the parents failed to state a claim for relief because they failed to allege (1) the breach of a duty "entirely independent" of the Center employees' employment relationships with the United States government and (2) that the abuse was reasonably foreseeable. Doc. 6-1 at 2.[3]

---

[3] The government also argued that the court lacked subject matter jurisdiction over the parents' failure to report claim because no private person could be

The district court held a hearing on the government's motion to dismiss. At the hearing, the court focused primarily on whether the Supreme Court's interpretation of the FTCA's intentional tort exception requires a plaintiff to plead that the government's "alleged duty [or] the negligence itself [is] independent of the [tortfeasor's] employment relationship" with the United States. Doc. 21 at 11. The court then instructed the parties to file supplemental briefing addressing the Supreme Court's decision in *Sheridan v. United States*, 487 U.S. 392 (1988), and our Court's application of *Sheridan* in *Alvarez v. United States*, 862 F.3d 1297 (11th Cir. 2017). The parties filed their supplemental briefs.

The parents also moved to amend their complaint. In their proposed amended complaint, they alleged that the government, as a childcare provider through the Center, owed them a duty "to exercise reasonable care for the safety of the child gauged by the standard of the average reasonable parent." Doc. 26-1 at ¶ 7 (citation modified) (quoting *Persinger v. Step By Step Infant Dev. Ctr.*, 560 S.E.2d 333, 335–36 (Ga. Ct. App. 2002)). According to the parents, the government breached this duty to care for and protect the children when it failed to prevent Flynn and Fritz from abusing them. The parents also alleged that the government had a legal

_____

held civilly liable for a failure to report child abuse under Georgia law. The parents conceded in their reply brief that there is no private right of action for a failure to report child abuse. They clarified, however, that they were claiming the government negligently breached its affirmative duty to care for and protect children in its custody, not that it failed to report child abuse in violation of a statutory requirement to do so.

6                    Opinion of the Court                23-12822

duty to keep the Center safe for its invitees under a state statute, O.C.G.A. § 51-3-1. The government breached this statutory duty, the parents alleged, by failing to: remove tortfeasors, monitor security cameras, implement adequate security procedures, document prior concerns, and take reasonable steps to discover ongoing abuse. The proposed amended complaint added that Flynn and Fritz committed the "egregious acts . . . outside the scope of their employment with [the government] and for their own personal gratification." Doc. 26-1 at ¶ 10.[4]

Applying *Sheridan* and *Alvarez*, the district court granted the government's motion to dismiss and denied the parents' motion to amend their complaint. The court ruled that the parents' claims were "entirely dependent on" the status of Flynn and Fritz as government employees and thus barred by the intentional tort exception to the FTCA. Doc. 28 at 8. Therefore, the court concluded, the government had not waived sovereign immunity for the parents' claims, and the court lacked subject matter jurisdiction over them. The court further concluded that any amendment to the complaint would be futile. Having determined that it lacked jurisdiction, the court did not address whether the parents had stated a claim.

---

[4] Flynn and Fritz pleaded guilty to committing cruelty to children in the second degree, in violation of O.C.G.A. § 16-5-70(c) and 18 U.S.C. §§ 7(3), 13, for causing the children to suffer physical and mental pain. They each were sentenced to six months' imprisonment. Lambert was charged with, and a jury found her guilty of, failure to report child abuse under 18 U.S.C. § 2258. She was sentenced to two years of probation. Lambert has appealed; her appeal remains pending.

This is the parents' appeal.

## II. STANDARD OF REVIEW

We review *de novo* a district court's dismissal of an action for lack of subject matter jurisdiction. *Alvarez*, 862 F.3d at 1301.

We review for abuse of discretion the denial of a motion to amend a complaint. *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006). "However, when the district court denies the plaintiff leave to amend due to futility, we review the denial *de novo* because it is concluding that as a matter of law an amended complaint would necessarily fail." *Id.* (citation omitted).

## III. DISCUSSION

On appeal, the parents raise two issues: (1) whether the district court erred in concluding that it lacked subject matter jurisdiction because the FTCA's intentional tort exception barred the parents' claims, and (2) whether the district court erred in denying the parents' motion to amend their complaint. We first address the FTCA's intentional tort exception and then turn to the district court's denial of the motion to amend.

### A. The District Court Erred in Dismissing the FTCA Claim Based on the Intentional Tort Exception.

As a sovereign entity, the United States is immune from suit unless it consents to being sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). "Through the enactment of the FTCA, the federal government has . . . waived its immunity from tort suits

based on state law tort claims." *Id.*; *see* 28 U.S.C. § 1346(b). Because the government consents to being sued, it may do so "according to whatever terms it chooses to impose." *Id.* at 1321–22. "[T]he fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA." *Id.* at 1324. Instead, plaintiffs must identify a state tort cause of action. *Id.* Courts must strictly adhere to the conditions on which the government consents to being sued and cannot recognize an exception absent from the waiver. *Id.* at 1322. If the United States has not waived its sovereign immunity from a plaintiff's claims, we lack subject matter jurisdiction to hear the case. *Id.*

The United States has limited its waiver of immunity from lawsuits based on state law tort claims with the FTCA's intentional tort exception. *Millbrook v. United States*, 569 U.S. 50, 52 (2013); 28 U.S.C. § 2680(h). The exception preserves immunity from suit for "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Millbrook*, 569 U.S. at 52 (citation modified) (quoting 28 U.S.C. § 2680(h)). "The phrase 'arising out of' is interpreted broadly to include all injuries that are dependent upon one of the listed torts having been committed." *Zelaya*, 781 F.3d at 1333. Therefore, a claim arises from a "§ 2680 excepted tort if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by that tort." *Id.*

The Supreme Court considered what constitutes a claim "arising out of" an assault or battery for purposes of the international tort exception in *Sheridan*. *See* 487 U.S. at 398–403. An intoxicated off-duty serviceman fired a rifle into the plaintiffs' car, causing property damage and physically injuring one of the plaintiffs. *Id.* at 395. Shortly before the shooting, three navel corpsmen found the serviceman drunk on the floor of a military hospital. *Id.* In attempting to take the serviceman to the emergency room, the corpsmen noticed that the serviceman was not only drunk but also armed, yet they failed to subdue him or alert the appropriate authorities after he "broke away" from their care. *See id.* The plaintiffs sued the United States, alleging that the corpsmen's negligence caused their injuries. *Id.* at 394. The district court dismissed the complaint for lack of subject matter jurisdiction under the FTCA's intentional tort exception. *Id.* The Fourth Circuit affirmed. *Id.* at 395. Recognizing a difference between "claims based *entirely* on an assault or battery" and claims "arising out of two tortious acts, one of which is an assault or battery and the other of which is a mere act of negligence," the Supreme Court reversed the dismissal. *Id.* at 398, 403.

The Court explained that "in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Id.* at 398. This was such a situation, the Court concluded, because the off-duty serviceman's employment with the government and his state of mind were distinct from the plaintiffs' claim. *Id.* at 403. The Court reasoned that "the mere fact that

[the serviceman] happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if [the serviceman] had been an unemployed civilian patient or visitor in the hospital." *Id.* at 402. The Court further reasoned,

> [b]y voluntarily adopting regulations that prohibit the possession of firearms on the naval base and that require all personnel to report the presence of any such firearm, and by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to perform its good Samaritan task in a careful manner.

*Id.* at 401 (citation modified). Thus, the corpsmen's negligence—allowing a foreseeable assault and battery—could furnish a basis for the government's liability that was independent of the drunk serviceman's employment status. *Id.*

We applied and explained *Sheridan* nearly thirty years later in *Alvarez*. 862 F.3d at 1307–10. There, Kenneth McLeod, who the Court assumed was a federal government employee, contracted with federal agencies to provide retirement advice to other federal employees. *Id.* at 1300, 1302. The agencies vouched for McLeod and caused their employees to trust him. *Id.* at 1301. He led retirement seminars hosted by the agencies and persuaded federal employees to invest their savings into his fund, which turned out to be a Ponzi scheme. *Id.* at 1300. Several federal employees and their families who lost money due to McLeod's fraudulent scheme sued

the federal government for aiding and abetting the fraudulent scheme, common law negligence, breach of fiduciary duty, negligent supervision, and negligent infliction of emotional distress.[5] *Id.* The government moved to dismiss, arguing that it was entitled to sovereign immunity under the intentional tort exception, which barred any claim arising out of a misrepresentation. *Id.* at 1300–01. The district court concluded that the plaintiffs' tort claims flowed from McLeod's misrepresentations and thus were barred by sovereign immunity. *Id.* at 1301. We affirmed. *Id.* at 1310.

In holding that the employees' claims were subject to the intentional tort exception, we looked to *Sheridan* and reasoned that the employees' negligent supervision claims were "rooted in supervisor-supervisee relationships at work, and thus closely related to McLeod's employment status." *Id.* (citation modified). We explained that all the employees' "other claims—no matter how framed—[we]re similarly connected to McLeod's employment status as a governmental employee hired to help discharge the

---

[5] The employees also brought an FTCA claim alleging that McLeod was negligent per se for selling unregistered securities in violation of the Florida Securities and Investor Protection Act. *Alvarez*, 862 F.3d at 1300. Although a negligence claim is not found in § 2680(h)'s list of excepted torts, we affirmed the district court's dismissal of this claim. We explained that the fact that the securities were unregistered had no effect on plaintiffs; they would have been harmed even if the securities had been properly registered. *Id.* at 1302. We then treated the negligence per se claim as a misrepresentation claim and concluded that it fell within § 2680(h)'s list of excepted torts. *Id.* The portion of our decision in *Alvarez* recharacterizing the negligence per se claim has no relevance to the issues before us here, and we discuss it no further.

Government's duty to provide retirement assistance to its employees." *Id.*

Having explored the most relevant precedent, we now turn to whether the FTCA's intentional tort exception applies to the parents' claims in this case. The parents alleged that the government "had an affirmative duty to care for and protect" the children and that the government breached its duty by (1) allowing two childcare providers to abuse the children repeatedly, (2) failing to report the ongoing child abuse, and (3) failing to prevent the child abuse. Doc. 1 at ¶ 9. In their response to the United States' motion to dismiss, the parents argued that the exception does not apply because "the negligence claim at issue arises from a completely independent duty which has nothing to do with the employment relationship between the tortfeasor and the United States." Doc. 12-1 at 5. The parents asserted that the United States' "duty to care for and protect the children was established before the intentional torts were committed by its employees." *Id.* at 6. They argued that the government breached that duty through "the inaction of its employees other than the daycare teachers who perpetrated the abuse (specifically, the director of the daycare)." Doc. 25 at 9.

Relying on *Sheridan* and *Alvarez*, the district court rejected this argument. Noting that the children's injuries arose from Center employees' intentional torts of assault and battery, the court explained that the parents' claims rested on the government's failure to monitor its employees, which was "connected to Flynn and Fritz's employment status as governmental employees hired to

help discharge the Government's duty to provide childcare to its employees." Doc. 28 at 7–8 (citation modified) (quoting *Alvarez*, 862 F.3d at 1310). The court thus concluded that the intentional tort exception barred the parents' claims.

On appeal, the parents argue that the district court erred because their claims are independent from the abusers' employment status. The parents argue that their claims arise out of Georgia law governing the duties of childcare providers, Air Force regulations, and the independent relationship between the government and the children—not from the assault and battery. The government counters that the parents' claims are "inextricably intertwined with the daycare employees' status as federal employees hired to provide childcare to the children," and thus we should affirm the district's court dismissal of the parents' claims because they are barred by the intentional tort exception. Appellee's Br. 21. We find the parents' arguments more persuasive and determine that the government's duty to the children is independent of the employment status of the Center's workers.

The parents alleged that the government undertook an affirmative duty, under Georgia law, to care for and protect the children in its custody. *See Laite v. Baxter*, 191 S.E.2d 531, 534 (Ga. Ct. App. 1972) (announcing a general rule that "a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury . . . [, and] to use reasonable care commensurate with the reasonably foreseeable risks of harm"). In addition, the

government promised parents who enrolled their children in the Center that it would abide by certain standards, set forth in the Air Force Child Development Center Criteria, when caring for the children. The Criteria required staff to prevent physical and psychological child abuse, report suspected child abuse, place on administrative leave any person under investigation for child abuse, prohibit threats and derogatory remarks toward children, and foster children's emotional well-being. By adopting the Criteria and promising that it would adhere to the Criteria's standards, the government assumed a duty to the parents arising out of those standards. *See Wallace v. Boys Club of Albany, Ga., Inc.*, 439 S.E.2d 746, 748 (Ga. Ct. App. 1993) (concluding that "the duty imposed on [the] defendant in this case is not only the general legal duty owed by anyone who undertakes the care of a child but also the duty arising from [the] defendant's policies, its promises to [the child's] parents to enforce those policies[,] and [the child's] parents' reliance on those promises").

Based on these allegations, the abusers' employment with the government is independent of the plaintiffs' negligence claims. Like the naval corpsmen in *Sheridan* who failed to subdue an armed, drunk serviceman and alert the appropriate authorities of a foreseeable assault and battery, the Center failed to prevent and report ongoing child abuse. These failures do not turn on the fact that the *abusers* were government employees.

Consider this hypothetical: The complaint instead alleges that the Center negligently allowed strangers to enter the Center

and abuse the children in the very same ways the employees abused the children in this case. Based on the hypothetical allegations, the government would owe and have breached the duty to care for and protect the children from abuse because they were under the Center's care and supervision, even though in the hypothetical case the assailants were not government employees. The parents would have a claim against the government that was entirely independent of any employment relationship. The same is true here. We thus conclude that the parents' negligence claims—that the Center failed to supervise the children, allowed the assault and battery to continue for approximately one month, and failed to report ongoing child abuse—fall outside the intentional tort exception to the FTCA's sovereign immunity waiver.

*Alvarez* is distinguishable because there the government employee's misrepresentations *made as a government employee* were the essence of the negligent supervision claim. And the failure to supervise was the failure to supervise the *employee*. Here, by contrast, the essence of the parents' claims is not that the excepted torts were perpetrated by the government employees, but rather the government's failure to supervise the *children*, uphold its adopted criteria and assurances to protect and nurture the children, and fulfill its duty to the children and their parents to act as an average reasonable parent. *See Wallace*, 439 S.E.2d at 748.

Although our precedent interpreting *Sheridan* is limited to *Alvarez*, the Seventh Circuit has applied *Sheridan* in a case with facts nearly identical to our hypothetical. In *Doe v. United States*,

unknown parties inappropriately touched two minors while the children were in the care of the Scott Air Force Base Day Care Center. 838 F.2d 220, 221 (7th Cir. 1988). It was unclear whether the abuse occurred at the daycare or another location. *Id.* The two children and their parents sued the United States, alleging that the government assumed a duty to care for the children and that it breached that duty when it allowed an unknown person to molest the minors. *Id.* Specifically, the plaintiffs asserted that the assaults occurred because the government failed to supervise the *victims*, not the assailants. *Id.* at 221–22. The Seventh Circuit held: "[W]here the government affirmatively assumes a duty to protect a person prior to and independent of any assault, and where an alleged breach of that duty leads to an assault on the person, whether or not by a government employee, the claim arises out of the government's negligence." *Id.* at 225. The Seventh Circuit thus concluded that the intentional tort exception did not bar the cause of action. *Id.* We agree.

Like the plaintiffs in *Doe*, the children here were harmed while in an Air Force daycare's custody. The parents alleged that the United States was negligent in breaching its duty to care for the children and proximately caused the children's physical and mental pain by failing to prevent and stop the ongoing assault and battery. The parents further alleged that under Georgia law and the Air Force Child Development Center Criteria, the United States voluntarily undertook a duty to protect the three children in its care before the abuse occurred. Because the government's liability

arises from its failure to protect the children, the fact that the tort-feasors are government employees does not matter.

The government urges us to follow the reasoning of *Reed v. United States Postal Service*, 288 F. App'x 638 (11th Cir. 2008) (unpublished). After James Reed, a postal service employee, was assaulted by another employee, he sued the United States Postal Service, bringing a negligent hiring claim. *Id.* at 640. We held that this claim was barred by sovereign immunity and properly dismissed for lack of subject matter jurisdiction under the FTCA's intentional tort exception because the claim arose from an assault and battery. *Id.* We explained that the only way the government could be liable on the negligent hiring claim was if it learned of the assailant's violent history through his employment relationship with the government. *Id.* Therefore, the government's liability would turn entirely on its status as the attacker's employer. *Id.*

Of course, *Reed* is an unpublished decision and thus not binding authority. In any event, *Reed* is distinguishable. Unlike in *Reed*, in this case there is no negligent hiring claim. The parents alleged that the government was negligent not in hiring Flynn, Fritz, and Lambert, but in failing to prevent abuse, report harm, and protect the children in its care. Moreover, the parents' claims arose from the relationship between the Center and the children, not the Center and its employees. And the Center's duty did not depend on knowledge it gained as the employer of Flynn, Fritz, and Lambert. Because of these differences, we find *Reed*'s analysis unpersuasive here.

Instead, we hold that the intentional tort exception, § 2680(h), does not apply when an FTCA claim arises out of the government's breach of an independent duty which, in turn, led to an excepted intentional tort. Therefore, the district court erred in dismissing the parents' claims for lack of subject matter jurisdiction based on sovereign immunity.

## B. The District Court Erred in Denying the Motion to Amend.

We now turn to the district court's denial of the parents' motion to amend their complaint. Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its complaint once as a matter of course within a specified timeframe. If an amendment is not made within that timeframe, then the party seeking to amend must have the opposing party's written consent or the court's leave, and the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "a district court . . . may deny leave . . . if amendment would be futile." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).

Here, the parents sought to file an amended complaint. The district court denied them leave to amend, concluding that any amendment would be futile because their claims were barred by sovereign immunity under the FTCA's intentional tort exception.

Based on our reasoning above, we agree with the parents that the claims in the proposed amended complaint are not barred by the FTCA's intentional tort exception. The district court therefore erred in denying on that basis the parents' motion to amend.

We note before concluding that, in its motion to dismiss, the government argued in the alternative that the parents' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the parents failed to state a claim for relief. Because the district court did not address whether the parents stated a claim, and given our ruling on the motion to amend, we decline to reach this issue for the first time on appeal. Instead, we remand to the district court to consider this issue in the first instance.

## IV. CONCLUSION

For the above reasons, we **VACATE** the district court's order dismissing the parents' complaint and denying their request to amend their complaint. We **REMAND** for further proceedings consistent with this opinion.

NEWSOM, Circuit Judge, concurring in the judgment:

I concur in the decision to vacate the district court's order dismissing the plaintiffs' claims and denying their motion to amend. I do have, though, what I think is a slightly different view about how best to synthesize the FTCA's general rule, its intentional-tort exception, the Supreme Court's decision in *Sheridan v. United States*, 487 U.S. 392 (1988), and our later decision in *Alvarez v. United States*, 862 F.3d 1297 (11th Cir. 2017). Let me try to explain, very briefly.

The FTCA, of course, waives the federal government's sovereign immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But under the FTCA's intentional-tort exception, the waiver of immunity "shall not apply to" "[a]ny claim arising out of" any of several enumerated torts—including, as relevant here, "assault" and "battery." *Id.* § 2680(h) (emphasis added).

There's another "but," though—the Supreme Court has recognized, in effect, an exception to the intentional-tort exception. In *Sheridan*, the Court held that there are "some situations" in which "the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." 487 U.S. at 398. What's the rationale

underlying the exception to the exception?  The Court posited two different rationales, but ultimately accepted only the narrower one. The Court first noted the possibility that a plaintiff who sues the government for failing to prevent an assault might have a viable claim if it "d[oes] not arise solely, or even predominantly, out of the assault." *Id.* at 399.  Declining to embrace that interpretation, the Court instead relied "exclusively on [a] second theory"—namely, "that the intentional tort exception is simply inapplicable to torts that fall outside the scope of § 1346(b)'s general waiver." *Id.* at 400. Because an assault by either a non-government employee or (as in *Sheridan*) a government employee operating outside the scope of his employment "could not provide the basis for a claim under the FTCA," the Court reasoned, the intentional-tort exception likewise wouldn't "apply to such an assault." *Id.*  Accordingly, the exception wouldn't bar a plaintiff's suit against the federal government alleging antecedent negligence that had failed to prevent that assault.

There's one wrinkle about *Sheridan* worth exploring briefly, because it bears on our more recent decision in *Alvarez*.  Concurring in *Sheridan*, Justice Kennedy offered a slightly different basis for concluding that the intentional-tort exception didn't foreclose the plaintiffs' claims there.  "Whether or not the intentional tort-feasor was on duty," he contended, isn't the relevant inquiry. *Id.* at 404–05 (Kennedy, J., concurring).  Rather, Justice Kennedy believed, the focus should be on whether the negligence asserted by a plaintiff against the government pertained to "the breach of a duty to select or supervise the employee-tortfeasor"—in which case, he said, the intentional-tort exception would bar the claim—or instead

to "the breach of some separate duty independent from the employment relation"—in which case the claim would survive. *Id.*

On, then, to our own decision in *Alvarez*, in which former federal employees and their spouses who had been duped into investing in a Ponzi scheme by a federal contractor sued the government for, among other things, negligently failing to supervise the contractor. 862 F.3d at 1300. The government argued that the intentional-tort exception foreclosed the plaintiffs' claims on the ground that they arose out of an enumerated tort—misrepresentation. *Id.* at 1302–03. We held that *Sheridan* didn't apply to save the plaintiffs' claims, *see id.* at 1310, but in so doing, I think we made a misstep. We properly recited *Sheridan*'s rule that "the intentional tort exception is simply inapplicable to torts that fall outside the scope of § 1346(b)'s general waiver," but then, oddly, never went on to ask the key question whether the contractor there was either (1) not a government employee or (2) a government employee acting outside the scope of his employment. *Id.* at 1308. Instead, we asked—in language evocative of Justice Kennedy's separate concurrence—whether the government's alleged negligence was "closely connected" to the contractor's employment status. *Id.* at 1309. And because we concluded that it was, we held that the intentional-tort exception barred the plaintiffs' claims.

Although I think it was a mistake to import Justice Kennedy's test into our analysis in *Alvarez*, I also think our prior-panel-precedent rule now binds us to that choice. But of course we're also bound by the Supreme Court's decision—by which I mean the

4                        NEWSOM, J., Concurring                    22-13626

majority opinion—in *Sheridan*.  The upshot, it seems to me, is that
a plaintiff in a case like this one—involving two torts, one inten-
tional and another sounding in negligence—has (at least) two
paths:  First, per *Alvarez*, he can pursue his negligence claim if it
involves the breach of a duty unconnected to the intentional tort-
feasor's employment status, *see* 862 F.3d at 1308; and second, per
*Sheridan*, he can pursue the claim if the intentional tortfeasor was
either not a government employee or a government employee act-
ing outside the scope of his employment, *see* 487 U.S. at 400.